UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER GORHAM                    :
    *Plaintiff*                          :
                                         :
v.                                    :            C.A. No.
                                         :
SYMETRA LIFE INSURANCE                :
COMPANY                               :
    *Defendant*                          :

## **COMPLAINT**

Now comes the Plaintiff in the above entitled matter and complains as follows:

### **Nature of Action**

1.  This is an action seeking an award to Plaintiff of long-term disability ("LTD") benefits under the group long-term disability plan (the "Plan") established by Thielsch Engineering, Inc. ("Thielsch"), which is administered and insured by Symetra Life Insurance Company ("Symetra").

2.  Plaintiff seeks recovery of benefits pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

3.  At all relevant times, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of his employment, Plaintiff was qualified under the Plan as a "participant" as defined by 29 U.S.C. §1002(7).  This claim relates to benefits under the foregoing Plan.

### **Parties**

4.  Plaintiff, Christopher Gorham, is and was at all relevant times a resident of the State of Rhode Island.

5.     Defendant, Symetra Life Insurance Company, upon information and belief, was at all

       relevant times an insurance company registered to do business in Rhode Island and

       having a usual place of business located at P.O. Box 34690, Seattle, WA 98124-1690.

**Jurisdiction and Venue**

6.     At all relevant times, Defendant had sufficient minimum contacts within the State of

       Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode

       Island's Long Arm Statute.

7.     Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of

       1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f).  In addition, this

       action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the

       District Court jurisdiction over actions that arise under the laws of the United States.

8.     ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal

       of benefit denials.  The administrative appeal process is satisfied and this dispute is ripe

       for suit.

9.     Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island,

       and Defendant is subject to this Court's personal jurisdiction with respect to this action.

       28 U.S.C. §1391(c)(2).

**Statements of Fact**

10.    Mr. Gorham is totally disabled from working in any occupation reliably and consistently

       due to metastatic melanoma and the side effects from the treatment used to save his life.

11.    The Plan defines "Disabled" as follows:

       Disabled/Disability means our determination that your sickness or
       injury began while you are covered under the policy and:

- during the elimination period and for the first 24 months of disability benefits, prevents you from performing with reasonable continuity the material and substantial duties of your regular occupation and a reasonable employment option offered to you by the employer and, as a result, the income you are able to earn is less than or equal to 80% of your pre-disability earnings.
- After the first 24 months of disability benefits, prevents you from performing with reasonable continuity the material and substantial duties of any gainful occupation and, as a result, the income you are able to earn is less than or equal to 80% of your pre-disability earnings.

12.     The Plan defines "material and substantial duties" as those duties that "are normally required for the performance of the occupation; AND cannot be reasonably omitted or changed."

13.     Mr. Gorham's regular occupation was operations supervisor for Thielsch's RISE program, which works with utilities and government agencies to provide energy-efficiency services and solutions.  As operations supervisor, Mr. Gorham was responsible for the oversight of technicians and staff working out of three locations, as well as the management of all sub-contractors.

14.     Prior to his disability, Mr. Gorham earned approximately $103,000 per year.

**Mr. Gorham was diagnosed with cancer**

15.     Mr. Gorham became totally disabled under the terms of the Plan on or about April 4, 2015, after he was diagnosed with stage IV metastatic melanoma (IVM1c melanoma).

16.     At the time of his diagnosis, Mr. Gorham's melanoma had metastasized to his liver, lungs, mediastinum (area between the lungs where the heart, esophagus, and trachea are located), retro-peritoneum (membrane lining of the abdominal cavity), mesentery (fold of the peritoneum that attaches the intestine to the abdominal wall), and soft tissue.

17. Mr. Gorham initially treated his cancer with combined Nivolumab and Ipilimumab immunotherapy.

18. On or about September 8, 2015, Mr. Gorham was diagnosed with acute interstitial nephritis (swelling in between the kidney tubules) and acute renal failure (sudden stoppage of kidney function).

19. Mr. Gorham's immunotherapy was stopped while he underwent treatment for nephritis.

**Symetra determined that Mr. Gorham was disabled and approved LTD benefits**

20.  On or about October 22, 2015, Symetra determined that Mr. Gorham was disabled from his regulation occupation under the terms of the LTD Plan, because Mr. Gorham "[h]as advanced disease and side effects from treatment . . . Appropriate for initial approval into ltd due to own occ."

21. On or about November 3, 2015, an MRI of Mr. Gorham's brain demonstrated a new enhancing lesion in the right frontal lobe cortex.

22. On or about November 19, 2015, Mr. Gorham underwent a stereotactic radiosurgery of the brain metastasis.

23. On or about November 30, 2015, Mr. Gorham restarted Nivolumab, but after only two doses it was discontinued again after Mr. Gorham developed bladder spasms and worsening urinary frequency.

**Symetra determined Mr. Gorham was disabled and approved life waiver of premium benefits**

24. On or about December 31, 2015, Symetra approved Mr. Gorham's claim for life insurance waiver of premium ("LWOP") benefits.

4

25. Disability under the life insurance plan means "You are prevented by injury or sickness from doing any work for which You are, or could become qualified" by education, training, or experience.

26. The life insurance plan's definition of disability is more difficult to satisfy than the LTD Plan's regular occupation and any occupation definitions of disability.

27. On or about April 4, 2016, Mr. Gorham restarted Nivolumab again, after updated imaging revealed numerous new bilateral pulmonary nodules, which were suspicious for metastatic disease.

28. Although the Nivolumab immunotherapy kept Mr. Gorham's cancer at bay, it caused side effects which included joint pain, burning mouth, insomnia, and chronic fatigue.

**The Social Security Administration determined Mr. Gorham was disabled and approved disability benefits**

29. On or about April 18, 2016, the Social Security Administration ("SSA") determined that Mr. Gorham was totally disabled as of April 3, 2015 and approved his claim for Social Security Disability Insurance ("SSDI") benefits.

30. Disability under the SSDI rules is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505.

31. The SSDI definition of disability is more difficult to satisfy than the Plan's regular occupation and any occupation definitions of disability.

32. Symetra reduced Mr. Gorham's LTD benefit by the amount of his base monthly SSDI benefit.  This decreased the monthly LTD benefit that Symetra paid to Mr. Gorham from $5,248 to $3,136.

33.     Mr. Gorham has continuously met the SSA's definition of disability and received SSDI
        benefits through the date of filing this complaint.

**Symetra reapproved Mr. Gorham's LTD and LWOP benefits**

34.     In or about August of 2016, Symetra commenced a review of Mr. Gorham's claim.

35.     On or about October 25, 2016, Mr. Gorham's oncologist, Patrick Ott, M.D., completed a
        disability assessment in response to Symetra's request for information.  The assessment
        listed Mr. Gorham's symptoms as fatigue, pain, rash, depression, and nephritis.  The
        assessment explained that Mr. Gorham's planned course of treatment was
        "[i]mmunotherapy therapy every 2 weeks until toxicity or disease progression."  The
        assessment concluded: "Patient is unable to do work of any kind due to advanced
        metastatic disease and side[] effects of treatment."

36.     On or about October 31, 2016, Symetra determined that Mr. Gorham's LTD benefits
        should continue because "[p]er assessment by Cancer Center 10/25/16 [he] continues
        immunotherapy every two weeks until toxicity or disease progression. [] unable to do
        work of any kind due to advanced metastatic disease and side[] effects of treatment."

37.     On or about November 1, 2016, Symetra reapproved Mr. Gorham's LWOP benefits
        because "[r]ec'd disability assessment from cancer center EE is being treated by.  EE is
        receiving chemo every two weeks, and do to the aggressive side effects and advanced
        state of EE's cancer, he is unable to do work in any capacity."

38.     Mr. Gorham continued to receive Nivolumab infusions every two weeks and continued to
        suffer side effects, including fatigue, insomnia, joint pain, burning mouth, and cognitive
        impairment.

**Symetra terminated Mr. Gorham's LTD benefits**

39.     In or about May of 2017, Symetra commenced another review of Mr. Gorham's LTD

claim in anticipation of the definition of disability changing from "regular occupation" to

"any occupation."

40.     On or about October 3, 2017, Dr. Ott's office completed another disability assessment in

response to Symetra's request for information.  The October 3, 2017 assessment was

essentially the same as the October 25, 2016 assessment.  The October 3, 2017

assessment demonstrated that there had been no change in Mr. Gorham's condition since

the last assessment on or about October 25, 2016.

41.     On or about October 24, 2017, Symetra nurse Christina Raymond determined that "the

clinical documentation does not clearly indicate what the claimant can or cannot do and

the claimant's treating providers will not comment [on] his abilities . . . Because of the

uncertainty, suggest the file be referred for review with a physician-specialty oncology."

42.     In her October 24, 2017 report, Nurse Raymond made no mention of the two disability

assessments Dr. Ott's office completed on October 25, 2016 and October 3, 2017.

43.     On or about October 24, 2017, Symetra reapproved Mr. Gorham's LWOP benefits

because "Last OV for 8/30/2017.  Indicates still undergoing treatment for cancer.

Doesn't seem to indicate any improvements."

44.     On or about November 9, 2017, Mr. Gorham's file was reviewed by Matthew Shupe,

D.O., an oncologist that Symetra hired using its vendor, Dane Street.

45.     Dr. Shupe determined: "From an oncology perspective, no specific restrictions or

limitations are noted that would prevent the claimant from working."

46.   On or about December 6, 2017, Symetra employee Diane Winiarski conducted an employability analysis based solely on Dr. Shupe's report.

47.   Ms. Winiarski created an ability profile, which listed Mr. Gorham's ability to perform certain physical and cognitive work tasks.

48.   Based on Dr. Shupe's opinion regarding Mr. Gorham's functional capabilities, Ms. Winiarski made several adjustments to Mr. Gorham's ability profile, without actually considering Mr. Gorham's medical condition or his physical capabilities.  Ms. Winiarski's adjustments included, among other things, adjusting strength from light to very heavy; adjusting all environmental conditions to constantly; and adjusting all physical activities to constantly.

49.   Very heavy work is defined as exerting in excess of 100 pounds of force occasionally, or in excess of 50 pounds of force frequently, or in excess of 20 pounds of force constantly.

50.   Ms. Winiarski determined that Mr. Gorham could work as a management trainee, a department manager, a production superintendent (which Symetra considered to be Mr. Gorham's regular occupation), or a warehouse manager.

51.   Ms. Winiarski's opinion was against the clear weight of the evidence in Symetra's possession.

52.   On or about December 30, 2017, against the clear weight of the evidence, Symetra terminated Mr. Gorham's LTD benefits.  In the denial letter, Symetra LTD case manager, Johana Matos wrote: "No abnormal physical exam findings, lab results, or radiographic findings support functional impairment from an oncology perspective.  There is no objective physical impairment preventing you from performing any occupation."

**Mr. Gorham appealed Symetra's termination of his LTD benefits**

53.     On or about June 25, 2018, Mr. Gorham timely appealed Symetra's wrongful termination of benefits.

54.     On or about August 20, 2018, Dr. Ott's office completed another disability assessment in support of Mr. Gorham's appeal.  The assessment listed Mr. Gorham's symptoms as fatigue, pain, depression, nephritis, shortness of breath, and joint aches.  The assessment explained that "[d]uration of treatment is every 2 weeks, 8hrs./day, until toxicity or disease progression" and it included "[m]onitoring of side effects including diarrhea, shortness of breath, headaches, changes in eyesight, fatigue, rash, and endocrine effects on the thyroid, pancreas and pituitary gland."  The assessment provided that Mr. Gorham could not work full-time or part-time because "Patient has Stage IV metastatic melanoma and will require close monitoring with provider visits, lab work, imaging, immunotherapy infusions and symptom management."

55.     On or about August 28, 2018, Mr. Gorham submitted information to Symetra in support of his appeal, including approximately 460 pages of updated medical records.

56.     On or about August 28, 2018, Symetra submitted Mr. Gorham's file for a medical record review by its consultant, Judy Schmidt, M.D., using its vendor, Professional Disability Associates.

57.     On or about September 5, 2018, Dr. Schmidt reviewed Mr. Gorham's medical records.

58.     Dr. Schmidt concluded: "based on the medical records currently provided only going through 8/30/17, I am unable to determine if the claimant would have any restrictions and limitations for the time period of 1/1/18 forward."

59.   By Symetra's own admission, Dr. Schmidt's September 5, 2018 "report was based on the information contained in the claim file prior to [Symetra's] receipt of the information [Mr. Gorham] submitted on August 28, 2018."

60.   Upon information and belief, Dr. Schmidt did not review any of the documents Mr. Gorham submitted on August 28, 2018 in support of his appeal, which included Mr. Gorham's updated medical records from after August 30, 2017.

61.   Upon information and belief, Dr. Schmidt did not review Dr. Ott's October 3, 2017 disability assessment.

62.   On September 13, 2018, Mr. Gorham completed a video interview regarding his health and disability.  During the interview, Mr. Gorham frequently lost his train of thought and forgot the questions that he had just been asked.

63.   On September 13, 2018, Mr. Gorham's wife completed a video interview regarding Mr. Gorham's health and disability.  She reported that Mr. Gorham can no longer focus, cannot remember things without writing them down, and was forgetful, such as forgetting to turn the gas on the stove off.

64.   On or about September 14, 2018, Mr. Gorham underwent an examination with vocational expert, Carl Barchi.

65.   Mr. Barchi observed that, approximately one hour into the interview, Mr. Gorham "began forgetting parts of both [Mr. Barchi's] questions and his responses to those questions" and ultimately had to "telephone[] his wife . . . so that she could help answer [Mr. Barchi's] questions."

66.   Mr. Barchi further observed that, approximately one hour into the interview, Mr. Gorham "began occasionally yawning—seemingly uncontrollably . . . as well as exhaling long

breaths with his eyes closed.  [Mr. Barchi] was concerned that he might be falling asleep but [Mr. Gorham] denied this."

67.   Given Mr. Gorham's increasing forgetfulness and fatigue, Mr. Barchi terminated the examination early and continued it several days later via teleconference.

68.   After interviewing Mr. Gorham and reviewing his medical records, Mr. Barchi determined that Mr. Gorham was totally disabled from both his former and any occupation "due solely to his cancer and its related side effects, symptoms and continued treatments."

69.   Mr. Barchi observed that Mr. Gorham had a total of 28 separate medical visits in the six months prior to Symetra's termination of Mr. Gorham's LTD benefits on December 30, 2017.

70.   Mr. Barchi observed that Mr. Gorham had a total of 43 separate medical visits in the nine months following Symetra's December 30, 2017 termination of Mr. Gorham's LTD benefits.

71.   Assuming that Mr. Gorham missed two full days of work as a result of each of his immunotherapy appointments (the 8-hour infusion day and the day of flu-like malaise following each infusion) and a half-day of work for each of his non-infusion medical appointments, Mr. Barchi calculated that Mr. Gorham would be absent from work 26% of the time, due solely to his medical treatments.

72.   Mr. Barchi determined that the number of medically-related absences Mr. Gorham would require render him "vocationally compromised and very likely unemployable."

73.     On or about September 28, 2018, Mr. Gorham submitted additional information to

Symetra in support of his appeal, including the vocational report from Carl Barchi, as

well as a DVD and transcript of the video interviews of Mr. Gorham and his wife.

74.     On or about October 13, 2018, Mr. Gorham underwent neuropsychological testing with

Francis Sparadeo, Ph.D.

75.     Dr. Sparadeo determined:

> Neuropsychological assessment revealed significant processing
> speed impairment, poor concentration, impaired delayed memory,
> and impaired rate of learning.  [Mr. Gorham] has severe
> vulnerability to interference and distraction when he is trying to
> process new verbal information.  Behavioral observations revealed
> circumlocutory speech at times, exceedingly slow processing,
> confusion at times, frequent derailment as he responds to certain
> questions, and limited frustration tolerance.

76.     Dr. Sparadeo opined:

> It is clear this patient experiences significant cognitive impairment
> that involves processing speed, working memory, rate of learning
> and delayed recall.  He also demonstrates behavioral evidence of
> neurocognitive change.  In my opinion, within a reasonable degree
> of neuropsychological certainty, this patient experiences
> significant cognitive decline.  It is also my opinion, within a
> reasonable degree of neuropsychological certainty that this patient
> is unable to work at any level due to the significant cognitive
> impairment he demonstrates.

77.     On or about October 18, 2018, Symetra reapproved Mr. Gorham's LWOP benefits.

Symetra determined: "Metastatic melanoma has responded well to therapy but [Mr.

Gorham] remains on active tx.  MMI [(maximum medical improvement)] reached.  [Mr.

Gorhan's] stage IV metastatic malignant melanoma status and frequency of

immunotherapy every 2 weeks ***would support severity of condition to reasonably render***

***[Mr. Gorham] disabled any occ***."  (emphasis added).

78.   The LWOP reapproval claim note further noted: "Note that LTD claim is currently closed and under appeal however recent appeal documents include a 9/22/2018 Vocational Assessment which concludes disability own and any occ."

79.   On or about November 9, 2018, Mr. Gorham submitted additional information to Symetra in support of his appeal, including updated medical records from Dana Farber Cancer Institute and Dr. Sparadeo's neuropsychological exam report.

80.   On or about November 29, 2018, Symetra submitted Mr. Gorham's file for a medical records review by its consultant, Edan Critchfield, PsyD, using its vendor, Professional Disability Associates.

81.   On or about November 29, 2018, Symetra submitted Mr. Gorham's file to Dr. Schmidt for an addendum to her September 5, 2018 report.

82.   On or about December 6, 2018, Dr. Critchfield reviewed Mr. Gorham's medical records. Dr. Critchfield concluded:

> From a neuropsychological perspective, the available medical records, including the claimant's 10/13/2018 neuropsychological evaluation, do not reflect cognitive or psychiatric impairment. . . . within this evaluation the claimant produced scores that were primarily within expectation and nonimpaired. This includes multiple measures of learning/memory that corresponded to the low average to average range; processing speed scores that corresponded to the average range; and attention scores that were average. It is this reviewer's opinion that the claimant's few low scores on measures of learning/memory, processing speed and attention reflect normal psychometric variability and do not reflect cognitive impairment.

83.   Dr. Critchfield arbitrarily rejected Mr. Gorham's low scores achieved during neuropsychological testing and Dr. Sparadeo's opinion that they resulted from cognitive impairment.

13

84. Upon information and belief, Dr. Critchfield had no basis for concluding that Mr. Gorham's low scores were the result of psychometric variability, rather than cognitive impairment.

85. Upon information and belief, Dr. Critchfield ignored Mr. Barchi's and Dr. Sparadeo's observations regarding Mr. Gorham's behavior, which further demonstrated cognitive impairment.

86. Upon information and belief, Dr. Critchfield did not review Mr. Gorham's video interview, which further demonstrated his cognitive impairment.

87. On or about December 7, 2018, Dr. Schmidt reviewed Dr. Sparadeo's neuropsychological exam report and records from seven of Mr. Gorham's medical appointments, only five of which were from 2018. Upon information and belief, despite the fact that Dr. Schmidt's original file review was conducted before any of Mr. Gorham's appeal evidence was received, Symetra did not provide Dr. Schmidt with all of the evidence Mr. Gorham submitted in support of his appeal, which included approximately 500 pages of additional medical records and over 30 medical appointments from 2018.

88. Upon information and belief, Symetra arbitrarily selected specific medical records for Dr. Schmidt to review that Symetra believed would result in an opinion from Dr. Schmidt supporting the denial of benefits.

89. Dr. Schmidt concluded that "[t]he medical records do no support functional impairment from 1/1/18 on."

90. Dr. Schmidt could not accurately assess Mr. Gorham's functional impairment as a result of his cancer without having reviewed and meaningfully considered all the available information and medical evidence.

91. Upon information and belief, "[t]he request [for an addendum from Dr. Schmidt] was for consideration of functional impairment primarily based on the neuropsychological testing," rather than for consideration of functional impairment based on Mr. Gorham's cancer and cancer treatment, despite the fact that Dr. Schmidt had never reviewed all of Mr. Gorham's cancer treatment records.

**Symetra denied Mr. Gorham's appeal**

92. On or about December 13, 2018, Symetra denied Mr. Gorham's appeal.  In the denial letter, appeals specialist Todd O'Rourke wrote: "We understand that Mr. Gorham may have ongoing reported symptoms of discomfort, headaches and cognitive difficulties. However, we find through our appeal review that Mr. Gorham remains capable of performing with reasonable continuity the material and substantial duties of his regular and any gainful occupation (including the occupations identified in the December 6, 2017 Employability Analysis Report)."

93. Symetra's decision to terminate Mr. Gorham's LTD benefits and deny his appeal was against the clear weight of the evidence.

94. Symetra's decision to terminate Mr. Gorham's LTD benefits and deny his appeal was wrong, arbitrary, and capricious.

95. Upon information and belief, Symetra was responsible for paying Plaintiff's LTD benefits.

96.   Upon information and belief, Symetra had a financial conflict of interest serving as (a) the fiduciary to determine plan beneficiaries' entitlement to benefits, and (b) the entity responsible for paying such benefits from its own assets.

97.   Upon information and belief, Symetra had a financial incentive to terminate Plaintiff's Plan benefits.

98.   Upon information and belief, Symetra's wrongful conduct during the administration of Plaintiff's claim was the result of Symetra's conflict of interest.

99.   Upon information and belief, Symetra's decision to deny Plaintiff's benefits was the result of Symetra's conflict of interest.

100.  Upon information and belief, the opinion of Dr. Matthew Shupe was influenced by Symetra's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Symetra and/or Dane Street.

101.  Upon information and belief, the opinion of Dr. Judy Schmidt was influenced by Symetra's conflict of interest, as well as her own financial conflict of interest and her desire for repeat business from Symetra and/or Professional Disability Associates.

102.  Upon information and belief, the opinion of Dr. Edan Critchfield was influenced by Symetra's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Symetra and/or Professional Disability Associates.

103.  Pursuant to R.I.G.L. § 27-4-28, Symetra has no discretion under the Plan, therefore, the Court's review of Plaintiff's claim is *de novo*.

104.  Based on the evidence submitted to Symetra or otherwise available to Symetra, establishing that Plaintiff has met the Plan conditions for entitlement to benefits continuously since April 4, 2015, and that he at all relevant times continued to meet said

conditions, Plaintiff is entitled to payment of all Plan LTD benefits owed to him plus interest on all improperly withheld payments.

## COUNT I
### (Enforcement of Plaintiff's Rights Under the Plan
### – ERISA 29 U.S.C. §1132(a)(1)(B))

105.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

106.   Plaintiff is entitled to enforcement of all of his rights under the Plan, including but not limited to, payment of all past and present monthly disability insurance benefits.

107.   Plaintiff is entitled to interest on all overdue payments.

## COUNT II
### (Breach of Fiduciary Duty Under the Plan
### – ERISA 29 U.S.C. §1104)

108.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

109.   To the detriment of Plaintiff, Symetra failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.

110.   To the detriment of Plaintiff, Symetra failed to discharge its duties with respect to the Plan solely in the interest of participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## COUNT III
### (Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the Plan
### – ERISA 29 U.S.C. §1132(a)(1)(B))

111.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

112.    Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of his rights to future benefits under the terms of the Plan.

113.    Plaintiff seeks a declaration that he has been continuously disabled under the terms of the Plan from April 4, 2015 to the present, and that he is entitled to any and all benefits wrongfully withheld for said period.

114.    Plaintiff further seeks a declaration that he is entitled to interest on all benefits determined to have been wrongly withheld from him under the Plan.

<u>**COUNT IV**</u>
**(Declaration of Plaintiff's Rights Under the Plan – 28 U.S.C. §2201)**

115.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

116.    Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing his rights under the Plan.

117.    Plaintiff seeks a declaration that he has been continuously disabled under the terms of the Plan from April 4, 2015 through the present, and that he is entitled to any and all benefits wrongfully withheld under the Plan for said period.

118.    Plaintiff further seeks a declaration that he is entitled to interest on all benefits determined to have been wrongfully withheld from him under the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court enter judgment in Plaintiff's favor and against Symetra and that the Court order Symetra to pay LTD income benefits to Plaintiff in the amount equal to the contractual amount of benefits to which Plaintiff is entitled.

B.      That the Court order Symetra to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment.

C.      That the Court order Symetra to continue paying Plaintiff benefits until such time as Plaintiff meets the policy conditions for discontinuance of benefits.

D.      That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g).

E.      That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the Plan.

F.      For such other legal or equitable relief as this Court deems just and proper, as well as the costs of suit.

The Plaintiff hereby designates J. Scott. Kilpatrick as Trial Counsel in this matter.

Plaintiff, by his attorneys,

/s/ J. Scott Kilpatrick
J. Scott Kilpatrick, Esq. (#4036)
jskilpatrick@cck-law.com
Mason J. Waring, Esq. (#7737)
mwaring@cck-law.com
Leah Small, Esq. (#9701)
lsmall@cck-law.com
Chisholm Chisholm & Kilpatrick LTD
One Turks Head Place - Suite 1100
Providence, RI 02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile